IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

**OSCAR SMITH v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 98-F-1773**

_____

**No. M2022-00455-CCA-R3-PD**

_____

Petitioner, Oscar Smith, a death row inmate, appeals the trial court's order denying his "Motion to Reopen Post-Conviction Proceedings and/or for Review under Post-Conviction DNA Analysis Act of 2001." The trial court denied Petitioner's motion to reopen and his DNA petition in the same order. Petitioner has filed a notice of appeal (Docket No. M2022-00455-CCA-R3-PD) and an application for permission to appeal (Docket No. M2022-00460-CCA-R28-PD). The Court hereby consolidates these two appeals under Docket No. M2022-00455-CCA-R3-PD. The record has been filed and Petitioner, in addition to having filed an application for permission to appeal, has already filed his appellate brief. Upon our review, we affirm the rulings of the trial court pursuant to Court of Criminal Appeals Rule 20.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed Pursuant to Rule 20, Rules of the Court of Criminal Appeals**

TIMOTHY L. EASTER, J. delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT H. MONTGOMERY, JR., JJ. joined.

Amy D. Harwell, Assistant Chief, Capital Habeas Unit and Katherine M. Dix, Assistant Federal Public Defender, Nashville, Tennessee, for Petitioner, Oscar Franklin Smith.

Herbert H. Slatery III, Attorney General & Reporter, for Respondent, State of Tennessee.

**MEMORANDUM OPINION**

Over 32 years ago, Petitioner murdered his estranged wife, Judith (Judy) Lynn Smith, and her two minor children, Chad and Jason Burnett, at their home in Nashville. *State v. Smith*, 868 S.W.2d 561 (Tenn. 1993). He received death sentences for each of the three murders. *Id.* Petitioner's convictions and sentences were upheld on direct appeal.

*Smith*, 868 S.W.2d at 582. He was unsuccessful in his subsequent pursuit of state post-conviction and federal habeas corpus relief. *Oscar Franklin Smith v. State*, No. 01C01-9702-CR-00048, 1998 WL 345353 (Tenn. Crim. App. June 30, 1998), *perm. app. denied* (Tenn. Jan. 25, 1999); *Oscar Smith v. Ricky Bell, Warden*, No. 3:99-0731, 2005 WL 2416504 (M.D. Tenn. Sep. 30, 2005), *vacated sub nom. Smith v. Colson*, 566 U.S. 901 (2012) (Order); *Oscar Smith v. Tony May, Warden*, No. 18-5133, 2018 WL 7247244 (6th Cir. Aug. 22, 2018). This Court recently affirmed the trial court's summary dismissal of Petitioner's request for testing of evidence pursuant to the Post-Conviction Fingerprint Analysis Act of 2021. *Oscar Smith v. State*, No. M2021-01339-CCA-R3-PD, 2022 WL 854438 (Tenn. Crim. App. Mar. 23, 2022), *perm. app. denied* (Tenn. Apr. 6, 2022).

On April 4, 2022, Petitioner filed in the trial court a "Motion to Reopen Post-Conviction Proceedings and/or for Review under Post-Conviction DNA Analysis Act of 2001." Petitioner previously obtained agreed orders from the trial court for DNA testing of an alleged murder weapon and clothing collected from Ms. Smith and Chad Burnett in relation to a sample of Chad Burnett's hair and blood samples from Petitioner, Ms. Smith and Jason Burnett. Petitioner filed his motion after having obtained the results of the DNA testing. The trial court entered its order denying relief on April 11, 2022. Because the trial court's order disposed of both the request to reopen the previously-filed post-conviction petition, Tennessee Code Annotated section 40-30-117, and to obtain testing under the DNA Analysis Act, Tennessee Code Annotated sections 40-30-301 *et seq.*, Petitioner, as required, has filed both an application for permission to appeal pursuant to Section 40-30-117(c) and a notice of appeal pursuant to Tennessee Rule of Appellate Procedure 3(b).

The Court hereby consolidates the two appeals under Docket No. M2022-00455-CCA-R3-PD. A record has been prepared and transmitted on appeal and Petitioner has already filed his appellate brief in addition to an application for permission to appeal. Petitioner is scheduled to be executed on Thursday, April 21, 2022. Petitioner also filed a motion for expedited briefing and for oral argument. Pursuant to our authority under the Rules of Appellate Procedure, the Court hereby suspends the requirement of a response from the State in order to expedite our decision in this matter. Tenn. R. App. P. 2. Thus, Petitioner's requests for an expedited briefing schedule and oral argument are denied as moot.

In its order, the trial court summarized the substance of Petitioner's recent filing:

> On December 7, 2016, during the pendency of [Petitioner's] federal habeas corpus litigation, forensic fingerprint examiner Kathleen Bright-Birnbaum filed a report detailing her analysis of several fingerprints left at the crime scene. Among the prints detailed in Ms. Bright-Birnbaum's report, included as Exhibit 1 to [Petitioner's] present motion, were two fingerprints

lifted from an awl (misidentified as a "leather awe" in the report) believed to be used during the offenses. Ms. Bright-Birnbaum identified one of the prints as belonging to Johnny Hunter, the Metropolitan Nashville Police Department fingerprint examiner who testified at Petitioner's trial. *See* Bright-Birnbaum report at 2. Regarding the second print, Ms. Bright-Birnbaum explained the print was "identifiable," but she was unable to identify who left the print. *Id*. [FN: The known comparison prints referenced in Ms. Bright-Birnbaum's report - presumably, those against which the unknown print was compared - were those of [Petitioner], the three victims, three members of the Metropolitan Nashville Police Department (including Hunter), and three persons specifically identified in Ms. Bright-Birnbaum's report but whose potential connection to this case is not apparent from the current pleadings. *See id*. at 1-2.].

According to the Petitioner, the presence of the unknown fingerprint on the awl prompted Petitioner's attorneys to seek DNA testing of the awl. Based upon the agreement of the parties, this [c]ourt entered an agreed order on January 19, 2022, transferring the awl to the Petitioner's selected DNA analyst, the Serological Research Institute ("SERI"). On February 28, 2022, the [c]ourt entered another agreed order transferring samples of the Petitioner's, Jason Burnett's, and Judith Smith's blood, along with a sample of Chad Burnett's hair, to SERI. Counsel for the Petitioner explains the resubmission of these samples as follows:

> As noted in the SERI report, the technology used here [to conduct the touch DNA analysis] is so new that [the examiner] had to re-examine the "known" specimens previously analyzed in 2016 so that a scientifically valid comparison could be achieved. Ex 4, SERI Rep. at 2 (noting resubmission of items); *see also* Second DNA Order, February 28, 2022 (releasing the known samples to SERI pursuant to the parties' agreement).

Smith motion at 6 n.3 (alterations added).

On March 30, 2022, SERI forensic DNA analyst Gary Hamor (and a "technical reviewer" whose electronic signature appears only as the initials "PH") submitted SERI's report on the agency's DNA analysis to the Petitioner's lead attorney, Amy Harwell. Regarding SERI's testing of the awl handle, which consisted of comparing a "touch DNA" sample obtained from the awl handle against known DNA samples from the Petitioner and the three victims, the report stated:

3

a. A DNA mixture was obtained.

b. The DNA mixture was interpreted as originating from two contributors with a major male contributor. Chad Burnette [sic] could be the major contributor to this mixture. The chance that a randomly selected, unrelated person would have the same profile as the major contributor is approximately 1 in 4 octillion.

c. Oscar Smith, Jason Burnette [sic], and Judy Smith are all excluded as contributors to the DNA results obtained from this item.

d. The minor portion of the mixture is suitable for comparison.

SERI Report, at 4 (included as Exhibit 4 to Petitioner's current motion).

As stated above, the DNA profile obtained from the awl handle consists of "touch DNA." In explaining the timing of the Petitioner's current motion, Petitioner's attorneys write,

Though it has been theoretically possible to develop "touch DNA" for several years, the Applied Biosystems™ GlobalFiler™ PCR Amplification Kit was not developed until 2012 and did not become available in most labs until after 2017. Ex.4 at 8, SERI Rep. The fully continuous probabilistic genotyping software program used for analysis on the awl, Bullet Proof Sentry, was not available until 2022. *Id*. That is, touch DNA was not available until well after [Petitioner's] trial and post-conviction proceedings, and the technology used to perform the touch DNA analysis that supports this Motion was not available until this year. Ex. 4, SERI Report at 8.

Petitioner's motion, at 5-6 (footnote omitted).

The trial court determined Petitioner did not file his "Motion to Reopen Post-Conviction Proceedings and/or for Review under Post-Conviction DNA Analysis Act of 2001" to delay execution of his sentence and thus proceeded to address the merits of the same. After discussing the established law governing motions to reopen (§ 40-30-117) and the DNA Analysis Act (§§ 40-30-301 *et seq*.), the court concluded as follows:

4

However, even in viewing the evidence in the light most favorable to the Petitioner - in this case the [c]ourt has no reason to doubt that SERI's testing of the touch DNA obtained from the crime scene awl revealed a profile that was, conclusively, not that of [Petitioner] - the Petitioner is not entitled to relief through a motion to reopen or under the post-conviction DNA act.  As this [c]ourt set forth in its order dismissing [Petitioner's] post-conviction fingerprint petition, extensive evidence of the Petitioner's guilt was introduced at trial.  The Court of Criminal Appeals summarized that evidence in its opinion affirming this [c]ourt's dismissal of the fingerprint petition:

> As the trial court observed, "the State possessed extensive circumstantial evidence against Petitioner other than the palm print, including (1) Petitioner's prior threats against and/or prior violence involving the victims; (2) a neighbor seeing Petitioner's car in the victims' driveway the night of the murders; (3) life insurance policies taken out by Petitioner on the lives of the three victims, and (4) one of the child victims yelling out 'Frank, no!' on the 911 recording."  Moreover, as the trial court noted, "[t]he evidence introduced at trial suggested Petitioner (and nobody else) had motive to kill the victims."  Two of Petitioner's co-workers testified Petitioner solicited them to kill his wife.  Likewise, as summarized above, evidence, in addition to the neighbor's testimony, was introduced to contest Petitioner's alibi defense.  The jury also learned Petitioner referred to his estranged wife in the past tense during questioning by the police and he did not "ask the officers the logical questions of where, when, how and by whom" when he was informed about the murders.  *Oscar Smith*, 2005 WL 2416504, at *4.  [Footnote omitted].  The post-conviction evidence also revealed Petitioner "was not contesting that the print was his; he was claiming that someone planted the print at the scene."  *Oscar Franklin Smith*, 1998 WL 345353, at *15.  [Footnote omitted].  Even [Ms.] Bright-Birnbaum could not conclusively state Petitioner did not leave the bloody palm print at the crime scene.

[*Smith*] fingerprint opinion, 2022 WL 854438, at *16 (footnotes added); *see also id*. at **2-7 (quoting list of facts set forth in federal district court opinion denying habeas corpus petition; this [c]ourt's November 2021 order denying

5

fingerprint motion also quoted that list). Additionally, this [c]ourt notes that in the DNA testing performed by Petitioner's selected laboratory, [Petitioner's] DNA "could be included as [a] contributor[] to the DNA results obtained" from the left sleeve of an "off-white long sleeve shirt with large red/brown stains." [Footnote omitted]. Presumably, this article of clothing was a bloodstained item worn by one of the victims at the time of that person's death.

To quote further from the Court of Criminal Appeals' opinion,

> In the case at hand, if we stacked the assumed most favorable [touch DNA] evidence on one side of a set of scales and the trial evidence on the other, the [touch DNA] evidence would not even begin to affect the scales or tip them in Petitioner's favor, either as to the guilty verdict or the sentences of death.

[*Smith*] fingerprint opinion, 2022 WL 854438, at *17 (alterations added).

Thus, the [c]ourt concludes there is not a reasonable probability that the recently-discovered DNA evidence would have prevented [Petitioner's] prosecution or conviction. Nor is there a reasonable probability the recently-discovered DNA evidence would have resulted in a more favorable conviction or sentence for [Petitioner] had the DNA evidence been presented at trial. Thus, [Petitioner] is not entitled to relief under either T[ennessee] C[ode] A[nnotated] section 40-30-304 or section 40-30-305. [FN: The [c]ourt observes that the touch DNA evidence at issue in this case had not been subjected previously to the type of testing conducted by SERI. While the awl still exists in a condition in which it can be tested, it is unclear whether the awl was preserved in such a manner that would have assured the DNA profiles were left at the crime scene and did not result from contamination. Had the other elements of sections 40-30-304 and -305 been met, however, this [c]ourt would have allowed the Petitioner to present evidence concerning this issue at an evidentiary hearing.]. Similarly, given the extensive evidence of [Petitioner's] guilt produced at his trial, even when considering the DNA evidence resulting from SERI's recent testing in a light most favorable to the Petitioner, the [c]ourt concludes [Petitioner] would be unable to prove by clear and convincing evidence that the DNA evidence establishes he is actually innocent of the offenses for which he was convicted. Thus, he is not entitled to reopen his post-conviction proceedings under T.C.A. section 40-30-117(a)(2). [Footnote omitted].

6

*Analysis*

A post-conviction court's denial of a motion to reopen a post-conviction petition does not afford a petitioner an appeal as of right, *see* Tennessee Rule of Appellate Procedure 3(b), rather, such denial may be challenged on appeal only by the filing of an application for permission to appeal no later than 30 days after the denial by the post-conviction court. T.C.A. § 40-30-117(c); Tenn. Sup. Ct. R. 28, § 10(B). There are four requirements for an appeal from a motion to reopen to be considered: (1) the timeliness of filing, (2) the place of filing, (3) the application to be filed, and (4) the attachments to the application. *Graham v. State*, 90 S.W.3d 687, 689 (Tenn. 2002). "In general, the contents of an application for permission to appeal must include the date and judgment from which the petitioner seeks review, the issue which the petitioner seeks to raise, and the reasons why the appellate court should grant review." *Id.* at 691. The statutory requirements are mandatory. *Timothy Roberson v. State*, No. W2007-00230-CCA-R3-PC, 2007 WL 3286681, at *9-10 (Tenn. Crim. App. Nov. 7, 2007), *perm. app. denied* (Tenn. Apr. 14, 2008).

Here, Petitioner adequately complied with the statutory requirements for seeking appellate review. However, Petitioner has not presented new scientific evidence establishing that he is actually innocent of the murders of the victims. Consequently, the trial court did not abuse its discretion when it denied Petitioner's motion to reopen the petition. As a result, we deny the application for permission to appeal the denial of the motion to reopen the post-conviction petition pursuant to Tennessee Code Annotated section 40-30-117(c).

With regard to Petitioner's motion for "Review under Post-Conviction DNA Analysis Act of 2001," we likewise conclude that the trial court did not abuse its discretion. *See Oscar Smith v. State*, 2022 WL 854438, at *17. The trial court analyzed the motion pursuant to both Tennessee Code Annotated sections 40-30-304 and -305 and determined that there was not a reasonable probability that the DNA evidence would have prevented Petitioner's prosecution or conviction or would have resulted in a more favorable conviction or sentence.

This Court's Rule 20 provides that if a judgment is rendered by the trial court without a jury, the judgment is not a determination of guilt, the evidence does not preponderate against the finding of the trial court, and no error of law requiring a reversal of the judgment is apparent on the record, then the judgment of the trial court may be affirmed by memorandum opinion when the opinion would have no precedential value. Tenn. Ct. Crim. App. R. 20. We determine that this case meets the criteria of Rule 20.

*Conclusion*

For the foregoing reasons, the rulings of the trial court are hereby affirmed in accordance with Court of Criminal Appeals Rule 20.

_____
TIMOTHY L. EASTER, JUDGE